ACCEPTED
04-15-00278-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/22/2015 9:25:17 AM
KEITH HOTTLE
CLERK

## NO. 04-15-00278-CR

## IN THE COURT OF APPEALS FOR THE
## FOURTH DISTRICT OF TEXAS
## SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

10/22/15 9:25:17 AM

KEITH E. HOTTLE
Clerk

_____

### SIDNEY R. DENBINA,
*Appellant*


v.


### THE STATE OF TEXAS,
*Appellee*

_____

## ON APPEAL FROM THE 187th JUDICIAL DISTRICT COURT
## OF BEXAR COUNTY, TEXAS
## CAUSE NUMBER 2014-CR-8319

_____

### BRIEF FOR THE STATE

_____


### NICHOLAS "NICO" LaHOOD
### Criminal District Attorney
### Bexar County, Texas

### ANDREW N. WARTHEN
### Assistant Criminal District Attorney
### Bexar County, Texas
### Paul Elizondo Tower
### 101 W. Nueva Street
### San Antonio, Texas 78205
### Phone: (210) 335-2414
### Email: awarthen@bexar.org
### State Bar No. 24079547
*Attorneys for the State of Texas*


## <u>ORAL ARGUMENT WAIVED</u>

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.2(a), the appellee supplements the appellant's list of parties as follows:

**APPELLATE STATE'S**
**ATTORNEY**

**Andrew N. Warthen**
State Bar No. 24079547
Assistant Criminal District Attorney
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
(210) 335-2414
awarthen@bexar.org

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL                    2

INDEX OF AUTHORITIES                                 4

STATEMENT OF THE CASE                                5

ISSUES PRESENTED                                     5

*APPELLANT'S SOLE ISSUE*
The evidence was legally insufficient to support the jury's implicit rejection of Sidney R. Denbina's claim that he acted in self-defense.

*STATE'S RESPONSE*
**The evidence was legally sufficient to reject appellant's self-defense claim. Viewing the evidence in a light most favorable to the verdict, the jury was free to disbelieve appellant's incredible version of events surrounding the shooting and conclude that he was lying. Moreover, the State presented ample evidence to not only disprove appellant's self-defense claim, but to also prove the elements of the offense beyond a reasonable doubt.**

STATEMENT OF FACTS                                   5

SUMMARY OF THE ARGUMENT                              6

ARGUMENT                                             7

PRAYER FOR RELIEF                                    16

CERTIFICATE OF COMPLIANCE AND SERVICE                17

# INDEX OF AUTHORITIES

Page

Tex. Penal Code Ann. § 9.01 .......... 9

Tex. Penal Code Ann. § 9.31 .......... 8

Tex. Penal Code Ann. § 9.32 .......... 9

*Acosta v. State*, 429 S.W.3d 621 (Tex. Crim. App. 2014) .......... 8

*Clay v. State*, 240 S.W.3d 895 (Tex. Crim. App. 2007) .......... 14

*Flanagan v. State*, 675 S.W.2d 734
(Tex. Crim. App. 1984) (op. on reh'g) .......... 10

*Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010) .......... 8

*Jackson v. Virginia*, 443 U.S. 307 (1979) .......... 7

*Miranda v. State*, 350 S.W.3d 141
(Tex. App.—San Antonio 2011, no pet.) .......... 9

*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991) .......... 9

*Whipple v. State*, 281 S.W.3d 482
(Tex. App.—El Paso 2008, pet. ref'd) .......... 7-9

*Zuliani v. State*, 97 S.W.3d 589 (Tex. Crim. App. 2003) .......... 9

## BRIEF FOR THE STATE

To the Honorable Fourth Court: Now comes, Nicholas "Nico" LaHood, Criminal

District Attorney of Bexar County, Texas, and files this brief for the State.

## STATEMENT OF THE CASE

The State accepts appellant's Statement of the Case except to note that

appellant was charged under § 22.02 of the Texas Penal Code, not § 22.01.

## ISSUES PRESENTED

*APPELLANT'S SOLE ISSUE*
The evidence was legally insufficient to support the jury's implicit rejection of
Sidney R. Denbina's claim that he acted in self-defense.

*STATE'S RESPONSE*
**The evidence was legally sufficient to reject appellant's self-defense claim.
Viewing the evidence in a light most favorable to the verdict, the jury was free
to disbelieve appellant's incredible version of events surrounding the shooting
and conclude that he was lying. Moreover, the State presented ample
evidence to not only disprove appellant's self-defense claim, but to also prove
the elements of the offense beyond a reasonable doubt.**

## STATEMENT OF FACTS

The State challenges the factual assertions contained in appellant's brief.

*See* TEX. R. APP. P. 38.2(a)(1)(B). The State will supply supplemental pertinent

facts supported with record references within its response to appellant's points of

error. The Reporter's Record will be referenced as "RR," followed by the

respective volume number. The Clerk's Record will be referenced as "CR."

Exhibits will be referenced as "Ex.," followed by their respective number.

## SUMMARY OF THE ARGUMENT

Viewing the evidence in a light most favorable to the verdict, the evidence supported the jury's finding of guilt. Appellant's own testimony was unbelievable. His outlandish claim that he was shot in the head, when there was overwhelming evidence to contradict that story, was more than enough indication that he was simply lying about the events in question. Because his version of events was supported by nothing besides his own uncorroborated testimony, the jury was free to disregard it. And without appellant's testimony, there was simply no evidence that he acted in self-defense. Moreover, the State offered a much more plausible account of the shooting through multiple witnesses and physical evidence. Further, there was no question that appellant fled the scene, which further implicated him. Simply, the jury acted well within its purview to reject appellant's story in favor of the State's solid evidence. Accordingly, appellant's sole point of error should be overruled and the trial court affirmed.

# ARGUMENT

## I. The evidence was legally sufficient to support the jury's rejection of appellant's self-defense claim.

### a. Standard of review and applicable law

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a reviewing court "must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Whipple v. State*, 281 S.W.3d 482, 495 (Tex. App.—El Paso 2008, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). A reviewing court does "not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so." *Id.* Instead, a reviewing court's "duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict." *Id.* "In so doing, any inconsistencies in the evidence are resolved in favor of the verdict." *Id.*

When an appellant challenges the legal sufficiency of the evidence supporting a fact finder's rejection of a non-affirmative defense, a reviewing court looks "not to whether the State presented evidence that refuted the appellant's defense," but rather it determines "whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found

7

the essential elements of the offense beyond a reasonable doubt and also could have found against the appellant on the defensive issue beyond a reasonable doubt." *Id.*

When evaluating the evidence, "the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). A reviewing court defers "to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal quotation marks and citations omitted). A reviewing court "is not to become a thirteenth juror." *Id.* And it "may not re-evaluate the weight and credibility of the record evidence and thereby substitute [its] judgment for that of the fact finder." *Id.* Instead, the role of a reviewing court "is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Id.*

"Self-defense is a justification for otherwise unlawful conduct." *Whipple*, 281 S.W.3d at 494. "A person is justified in using force against another when and to the degree that she reasonably believes the force is immediately necessary to protect herself against the other's use or attempted use of unlawful force." *Id.* (citing Tex. Penal Code Ann. § 9.31). A person is justified in using deadly force

against another 1) if she would be justified in using force against the other under § 9.31 of the Penal Code, and 2) when and to the degree that she reasonably believes the deadly force is immediately necessary to protect herself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32(a). "The Penal Code defines 'deadly force' as 'force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.' *Whipple*, 281 S.W.3d at 494 (citing Tex. Penal Code Ann. § 9.01(3)).

"An accused bears the burden of production with respect to defenses, requiring her to raise evidence that supports the defense." *Id*. (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). "Once the defendant has met this burden, the State then shoulders the burden of persuasion to disprove the defense." *Id*. "The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt." *Id*. "When a jury finds the defendant guilty, there is an implicit finding against the defensive theory." *Id*.; *see also Miranda v. State*, 350 S.W.3d 141, 147 (Tex. App.—San Antonio 2011, no pet.).

*b. The evidence was legally sufficient to reject appellant's self-defense claim*

Here, the evidence was more than sufficient to support the jury's rejection of appellant's self-defense claim. Appellant cites many record references to his own testimony at trial to support his claim that no rational jury could have discounted his defensive theories. But the jury is free to "accept or reject the testimony of any witness." *Flanagan v. State*, 675 S.W.2d 734, 746 (Tex. Crim. App. 1984) (op. on reh'g). It did not have to credit any of appellant's self-serving and fantastic claims that he only shot Uvaldo Siller, the victim, after Siller shot appellant in the head with a gun that miraculously left no wound.

According to appellant, he was innocently standing outside of his home on the evening of April 30, 2014, when Siller drove up to his own home, parked his truck, got out of the vehicle, walked across the street to appellant's Jeep, and—for apparently no reason whatsoever—scraped a six-inch mark into the door of appellant's vehicle. (RR4 156-57, 171-74.) Then, as appellant approached Siller to inquire why he had keyed appellant's car, but before either man said anything, Siller pulled out a "Derringer or small revolver" and, without any provocation, shot appellant in the left side of the head. (RR4 157, 175-77.) Appellant started bleeding, but not profusely. (RR4 178, 191-92.) The bleeding was so minimal, in fact, that no blood ever even contacted appellant's clothing. (RR4 179.) And, as of the day that appellant testified for trial, the bullet remained lodged in his skull

10

(RR4 158-59, 192), though it left a virtually invisible scar and even appellant himself could not feel it. (RR4 192-93.) After being shot, appellant then shot Siller multiple times and absconded into his home. (RR4 159.)

Further, according to appellant, after having been shot in the head himself, and shooting another man, his initial instinct was not to seek medical help, nor was it to inform law enforcement that he had been assaulted with a deadly weapon. (RR4 189-91, 194.) In fact, he never contacted law enforcement to report Siller's alleged aggravated assault. (RR4 195.) Instead, appellant decided that the best course of action was to flee to a nearby gas station. (RR4 161, 191, 199.) Once there, while he was still bleeding because of the bullet in his head, appellant decided that the next person that he should speak to was a lawyer. (RR4 161, 190 192, 194.) His brother was an attorney in Dallas, so he got on a train and headed north. (RR4 161-62.) Along the way, he was arrested in Fort Worth. (RR4 162-63.) Later, while out on bond, he finally consulted a doctor about his head wound but elected against any surgery. (RR4 198-99.)

As is apparent, appellant's story was, to put it mildly, incredible. It was also counter to other evidence presented at trial. To begin, there was no evidence whatsoever that appellant had ever been shot in the head. As will be discussed more below, Siller testified that he possessed no weapon the night of the shooting, let alone that he shot appellant in the head. (RR4 111.) Moreover, appellant

11

acknowledged that no shell casings from any gun other than his were found at the scene. (RR4 177.) Additionally, Jimmy Ferguson, the City of Fort Worth police officer who arrested appellant, confirmed that when appellant was arrested the day after the shooting he had no visible injuries to his face or body. (RR4 62-63.)

Furthermore, appellant's mug shot was admitted into evidence. (RR7 613-14; State's Ex. 89.) That photograph shows absolutely no injuries to the left side of appellant's face—or, for that matter, any part of his face. At trial, there was a bit of a disagreement as to when that photograph was taken, but in a sufficiency review, this court must assume that it was a date that is most favorable to the verdict. That means that the mug shot was taken on May 6, 2014, less than a week after the shooting. (RR4 213; RR7 615-16; State's Ex. 90.) And the jury could reasonably conclude that it was impossible for appellant to exhibit absolutely no injuries less than a week after being shot in the head.[1] Add to that the fact that appellant offered no medical records or other evidence to support his claim (RR4 200), and the jury was free to conclude that appellant was simply lying about the events of that night. And, because appellant's testimony is the only evidence to support his self-defense claim, viewing the facts in a light most favorable to the verdict, a rational trier of fact could have rejected his self-defense claim.

---

[1] Moreover, all agreed that it would have been taken no later than May 14, 2014, two weeks after the shooting. (RR4 213.) The jury could likewise reasonably conclude that it was impossible for appellant to exhibit absolutely no injuries only two weeks after being shot in the head.

On the other hand, the State provided ample evidence that appellant committed aggravated assault with a deadly weapon and did not act in self-defense. Siller testified that he arrived home on the night of the shooting, he backed his truck into his driveway, he saw appellant across the street, he noted that appellant was holding something in his hands that was generating a bright light, he observed appellant move towards the ground and then come back up with "ear protection" on,[2] he exited from his truck, and then he felt an impact in his back. (RR4 94, 96-98.) Siller's body then went numb and he fell to the ground. (RR4 98-99.) He thereafter observed appellant holding a gun and shooting at him. (RR4 99-101.) Siller went on to testify that he gave appellant no reason to assault him through any actions or threats. (RR4 111-13.) He confirmed that he had no weapons at that time on either his person or in his truck. (RR4 111, 122.) He also testified that he never approached appellant's Jeep or home. (RR4 121-22, 125.)

Angela Bruce corroborated Siller's version of events. Bruce was Siller's next-door neighbor and lived across the street from appellant. (RR3 91.) She was in her front yard speaking with a friend when the shooting occurred. (RR3 90.) She saw appellant that night standing behind his Jeep "pacing back and forth."

---

[2] Siller also testified that that he had previously seen appellant wear those "earmuffs" when appellant would cut his grass. (RR4 97-98.) That testimony, which the jury was free to credit, contradicted appellant's claim that he was wearing "new headphones" and listening to satellite radio in his front yard the night of the shooting. (RR4 154.) And because appellant, as the defendant, would have been present in the courtroom and heard Siller's testimony concerning the ear protection, the jury could have reasonably concluded that appellant simply concocted a story about the headphones to explain why he was wearing headgear that evening.

13

(RR3 91.)  She then observed Siller back his truck into his driveway.  (RR3 95.)

"[P]retty much immediately" thereafter, she heard gunshots and saw flashes coming from "the direction of [appellant's] Jeep."  (RR3 96.)  She then sought shelter inside, where she promptly called 911.  (RR3 96-97.)  She eventually looked outside and saw Siller lying on the sidewalk and shouting in pain.  (RR3 97-98.)  She did not see any weapons, such as a gun, around him.  (RR3 98.)  During re-direct examination, Bruce confirmed that she never saw any gunshot flashes come from the area near Siller's truck, but, instead, only from the area that appellant had been standing.  (RR3 108.)

It was the jury's duty to resolve the conflicts between appellant's testimony and those of Siller and Bruce.  Based on its verdict, it clearly believed the latter two witnesses.  That is, the jury believed that appellant shot Siller when he arrived home and without any provocation on Siller's part.  As this was a simple he-said-he-said case, there is no reason to conclude that the jury did not act rationally when it believed the State's witnesses over appellant.

Moreover, "[e]vidence of flight evinces a consciousness of guilt."  *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007).  Here, the jury heard uncontroverted evidence that appellant absconded from the county following the shooting rather than stay to explain his side of the story.  The jury, using its common sense, could have rationally decided that no one, including appellant,

14

would believe that being a fugitive from the law placed himself in less danger than simply locking himself in his home until the police arrived whereupon he could explain his side of the story and show law enforcement his head wound. That is, it was well within the jury's purview to conclude that the only reason that appellant would have fled was because he knew that he was guilty, and not because of his fanciful assertions that he believed that his life was in danger if he stayed inside his home until the police arrived. (RR4 187-89.)

Finally, eight bullet-shell casings that matched appellant's gun were collected from the crime scene. (RR4 29, 139-44.) And, as stated previously, even appellant acknowledged that no other casings were found at the scene. (RR4 177.) The jury could reasonably conclude that appellant would not have fired his gun eight times considering that he himself testified that Siller only fired one shot from a small firearm.

Plainly, based on the glaring inconsistencies between appellant's story and the evidence at hand, his bizarre decision not to seek medical attention immediately after he was allegedly shot in the head, his unwillingness to report any crime Siller may have committed against him or his property, his flight from the crime scene to the other side of the state, and the lack of any evidence to support his claims other than his own self-serving testimony (which the jury was free to disbelieve), viewing the evidence in a light most favorable to the verdict, the jury

15

acted rationally when it discredited appellant's version of the events and concluded that the State proved its case beyond a reasonable doubt. Accordingly, appellant's sole point of error must be overruled.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas submits that the judgment of the trial court should, in all things, be AFFIRMED.

Respectfully submitted,

Nicholas "Nico" LaHood
Criminal District Attorney
Bexar County, Texas


___/s/_____
Andrew N. Warthen
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-2414
Email: awarthen@bexar.org
State Bar No. 24079547

*Attorneys for the State*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I, Andrew N. Warthen, herby certify that the total number of words in appellee's brief is 2,668. I also certify that a true and correct copy of the above and forgoing brief was emailed to appellant Sidney R. Denbina's attorney, Michael D. Robbins, Assistant Public Defender, at mrobbins@bexar.org, on this the 22nd day of October, 2015.

_____/s/_____
Andrew N. Warthen
Assistant Criminal District Attorney

*Attorney for the State*